UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZOHAR STARK, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br>v.<br><br>AMERICAN SKANDIA LIFE ASSURANCE CORPORATION,<br><br>      Defendant. | : NO. _____<br>:<br>:<br>:<br>:<br>: CLASS ACTION COMPLAINT<br>:<br>: |

Plaintiff, Zohar Stark, individually and on behalf of a class of all others similarly situated, by his attorneys, alleges the following for his Complaint against Defendant American Skandia Life Assurance Corporation ("American" or "Defendant"):

## I. NATURE OF THE ACTION AND SUMMARY OF CLAIMS

1. Plaintiff is the plan administrator of the Zohar Stark, M.D., P.C., Profit Sharing Plan ("Plan"). Plaintiff, as administrator of the Plan, purchased a Group Deferred Annuity Contract ("Contract") from Defendant in April of 2000. Plaintiff brings this action pursuant to § 502(a)(2) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2) and (3), on behalf of the Plan and a class of all trustees, sponsors and administrators of all "employee benefit plans" under ERISA, 29 U.S.C. § 1002(1), that owned variable annuity contracts from Defendant (the "Class").

2. As more fully set forth below, Defendant is a fiduciary of the Plan pursuant to ERISA, and as such has a duty not to charge excessive fees for its services or to engage in prohibited transactions. These duties are set forth in ERISA §§ 404 and 406, 29 U.S.C. §§ 1104

and 1106, and in Department of Labor Regulations, 29 C.F.R. § 2550.  As set forth below, Defendant breached these duties by improperly accepting, for its own benefit, payments from third party mutual funds which were paid from assets held for the benefit of the Plan.  As a result of these breaches, Defendant was overpaid for services rendered under the Contract, and the Plan's assets were diminished by the amount of the payments, and the income those payments would have earned had they been properly credited to the Plan's Account.  Plaintiff seeks damages and equitable relief on behalf of the Class.

## II.  JURISDICTION AND VENUE

3. Plaintiff's claims arise under and pursuant to ERISA § 502, 29 USC § 1132.

4. This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

5. Venue is proper in this District because Defendant's principal place of business, and the location of its headquarters, is in Shelton, Connecticut.

## III.  THE PARTIES

6. Plaintiff Zohar Stark is a resident of Pennsylvania.

7. Defendant, American Skandia Life Assurance Corporation , is a stock life insurance company domiciled in Connecticut with its principal place of business in Shelton, Connecticut.

## IV.  SUBSTANTIVE ALLEGATIONS

*Description of the Plan*

8. The Plan is an Employee Benefit Plan within the meaning of ERISA § 3(3) and 3(2)(A), 29 U.S.C. § 1002(3) and 1002(2)(A). The purpose of the Plan is to provide retirement benefits to Plan Participants.

9.      The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).  The Plan provides individual accounts for each Participant and pays benefits to a Participant based solely upon the amount of money in his or her individual account.  Thus, the amount of benefits received by a Participant in the Plan is not set by contract (as it is in a "defined benefit" plan), but rather, depends upon the amount of money invested in the Participant's account, the performance of the accounts' investments, and – critically – the fees charged by the companies who manage the money.  The Plan is a typical defined contribution retirement plan similar to those offered by employers throughout the country.

***Description of the Contract***

10.     The Contract between Plaintiff and Defendant became effective on April 5, 2000.

11.     The Contract provides that Defendant will hold and manage amounts paid by the Plan ("Assets") to Defendant in accounts maintained by Defendant which are segregated from Defendants' general funds (the "Separate Accounts").

12.     The Contract provides that Defendant does not hold the Assets in trust for the benefit of the Plan but rather owns the Assets in the Separate Accounts.  The Separate Accounts are bookkeeping entries in Defendant's books and records.

13.     The Contract requires Defendant to invest the Assets in Separate Accounts and credit or charge any income, gains or losses from investment of the Assets to the Separate Accounts, but provides that the Separate Accounts are not chargeable with liabilities arising out of Defendants' other business.

14.     Defendant is required to record and maintain accounts for contributions by the Plan on behalf of each Participant, the investment of those contributions and the fees, gains and

losses associated with those investments ("Participant Accounts").

15.     The value of the Assets recorded in a Participant Account is termed the Participant's "Account Value."

16.     Subject to the terms of the Contract, Defendant has a contractual obligation to pay the Plan an amount equal to the Account Value upon withdrawal request.

**Investment Options Pursuant to the Contract**

17.     Defendant established and maintains a variety of investment options among the Separate Accounts, including a Fixed Separate Account (which is a fixed income investment account) and various mutual fund investment options in a Variable Separate Account.

18.     The proportion of Plan Assets allocated to each investment option is determined by Plan Participants, subject to certain restrictions discussed below.

19.     A Plan's investment allocation to a Fixed Separate Account is the Plan's "Fixed Allocation."

20.     Defendant reserves the right to limit the amount of a Plan's Fixed Allocation.

21.     To allocate Assets to a Variable Separate Account, a Participant selects the mutual fund (s) into which he wants the Assets in his Account allocated.

22.     The Contract provides that Defendant has the right, in its sole discretion, to substitute alternative mutual funds, trusts or portfolios for the mutual funds it offers.

23.     The Contract permits the Plan to change the amount of Assets allocated to the respective investment options through inter-account transfers.

24.     To limit transaction costs incurred by Defendant in performance of the Contract, the Contract permits Defendant to limit the number of transfers each year.

25.     The Contract also permits Defendant to restrict trading among the mutual funds to

further limit transaction costs.

***Defendant's Pooling of Assets***

26.     Defendant offers the specific mutual funds through so-called "Sub-accounts," which are bookkeeping sub-accounts within the Variable Separate Account established and maintained by Defendant to account for investment in the mutual funds.

27.     A Sub-account is maintained for each mutual fund offered by Defendant under the Contract.

28.     As part of its record keeping duties, Defendant allocates Assets in Participant Accounts to the particular Sub-account that invests in the requested mutual fund.

29.     Defendant permits other plans that are members of the Class to allocate assets to the same Separate Accounts and Sub-accounts available to the Plan.

30.     All assets invested pursuant to variable annuity contracts established and maintained by Defendant in a particular mutual fund are accounted for and pooled in a single Sub-account.

31.     Each mutual fund is registered as an open-end management investment company, shares of which are sold to separate accounts of life insurance companies that offer variable annuity and life insurance products.

32.     Defendant buys shares of a mutual fund in its own name with its own assets in an amount equal to the value of the total amount pooled in the respective Sub-account.

33.     Participant Account allocations to a mutual fund Sub-account are accounted for as bookkeeping entries which show "units" of interest in the Sub-account. The Plan does not actually own shares of the mutual fund.

34. Defendant invests on an aggregate basis all of the asset allocations accounted for in a Sub-account. For example, if Participant A instructs Defendant to "buy" $150 worth of XYZ Mutual Fund, and Participant B instructs Defendant to "sell" $100 of the same fund, Defendant makes inter-account bookkeeping adjustments to credit Participant A's Account for $100 worth of "units" of the Sub-Account invested in XYZ Mutual Fund, and debits Participant B's Account for $100 worth of that Sub-account's units. Defendant then purchases $50 worth of shares of the mutual fund in its own name, and credits $50 to the XYZ Mutual Fund Sub-account and to Participant A's Participant Account. Only after netting the "purchase" and "sale" instructions from all of the Participant Accounts with Assets allocated to a particular Sub-Account does Defendant actually purchase or sell shares of the mutual fund. Upon information and belief, Defendant engages in only one such transaction per day with each mutual fund.

***Fees and Charges for Defendant's Services***

35. The Contract provide for a transfer fee for transfers among investment options.

36. The Contract provides for an annual maintenance fee for maintaining the annuity.

37. The Contract provides for a number of other charges assessed against the daily value of amounts allocated to the Sub-accounts. These charges include an administration charge, a mortality and expense risk charge, a distribution charge and a settlement service charge.

38. These charges and fees compensate Defendant for performing all services required to establish, operate and administer the annuity, such as creating the Separate, Sub and Participant Accounts, allocating contributions to these Accounts, accounting for purchases, sales and transfers to and from these Accounts, accounting for gains, losses and charges concerning these Accounts, preparing confirmations of transactions in these Accounts and preparing periodic statements of the value of these Accounts.

39.     Defendant accounts for all contributions, purchases, sales, investment allocations, transfers, gains, losses and charges concerning Separate, Sub and Participant Account investments as part of its regular duties under the Contract for which it is paid the foregoing fees.

40.     The Plan also pays a number of additional fees to the mutual fund companies that manage the investments in the mutual funds held in the Sub-accounts. These fees include "Management Fees," "Other Expenses," "12-b 1 Fees," and "Acquired Portfolio Fees and Expenses" (collectively, "Investment Expenses"). Upon information and belief, the Investment Expenses comprise the total fees and expenses necessary and appropriate with respect to the Sub-accounts' investments in the mutual funds.

***Revenue Sharing Payments from Mutual Funds***

41.     Defendant or its affiliates receive a fee of up to .75% of the value of the assets held in a Sub-account for the benefit of the Plan and other class members from the mutual fund in which the Sub-account invests or from the fund's investment advisor or distributor (the "Revenue Sharing Payments").

42.     Upon information and belief, Defendant consistently receives the Revenue Sharing Payments.

43.     In addition, Defendant is paid separately by the mutual funds or their advisors or distributors for marketing and administrative services they provide in connection with the Sub-account investments.

44.     Although the Revenue Sharing Payments are purportedly for "support services" to the mutual funds, since Defendant is fully compensated for the work it performs under the Contract for investment and management of the Sub-accounts and is separately paid for marketing and administrative services by the mutual funds and their affiliates, upon information

and belief, Defendant does little or no work in exchange for the Revenue Sharing Payments.

45.     Any Revenue Sharing Payments paid to Defendant for investment of the Sub-accounts should have inured to the benefit of the Plan and not to the benefit of Defendant.

***Defendant's Fiduciary Status and Duties Under ERISA***

46.     ERISA defines a "fiduciary" as anyone who exercises authority or control over the management or disposition of Plan Assets. 29 U.S.C. § 1002(21)(a).

47.     Defendant exercised authority or control over the management or disposition of Plan assets. First, Defendant controls which mutual funds are available as investment options for the Plan and its participants. Second, Defendant uses its custody or control over the mutual funds to obtain revenue sharing payments from mutual fund advisors. Finally, Defendants are fiduciaries by virtue of all the actions it can and does take pursuant to the Contract. Specifically, the asset of the Plan is a right to payment from Defendant in an amount equal to the value of the Assets, net of any gains, losses and charges. Defendant had authority or control over the management or disposition of this payment and the investments, which affected the value of the payment. For example, Defendant accepted and owned Plan contributions, managed the Separate and Participant Accounts, selected the investment options in which the Accounts were permitted to invest, negotiated with mutual fund companies the terms pursuant to which the funds would be included as investment options and purchased and sold mutual fund shares the performance of which determined the amount of the payment. Accordingly, Defendant is a fiduciary under ERISA.

48.     Defendant is also a fiduciary as to the Revenue Sharing Payments. The Revenue Sharing Payments themselves constitute Assets in Defendants hands because, (a) Defendant received the Revenue Sharing Payments as a result of its fiduciary status or function (i.e.,

because Defendant receives payments from mutual funds in exchange for offering the funds as an investment options under the Plans) and (b) the Revenue Sharing Payments were made by the mutual fund advisors and received by Defendants at the expense of the Plan and its participants (because the mutual fund set the fees they charged the Plan and its participants to cover not only the fees they would normally have charged, but also the amount of the Revenue Sharing Payments they make to Defendant). Defendant is therefore a fiduciary with respect to the Revenue Sharing Payments because it exercises authority or control respecting their management or disposition by arranging for, accepting and retaining them.

49. ERISA imposes on a plan fiduciary the duty of loyalty – that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ."

50. The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

51. ERISA § 406 (b)(1) also prohibits a fiduciary from dealing with assets of a plan for its own interest or account. 29 U.S.C. § 406 (b)(1).

V.     **CLASS ACTION ALLEGATIONS**

52. Plaintiff brings this action in part as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all trustees, sponsors and administrators of all "employee benefit plans" under ERISA, 29 U.S.C. § 1002(1), that owned variable annuity contracts from Defendant.

53. The members of the Class are so numerous that joinder of all members is

impracticable. While the exact number of Class members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, thousands of members of the Class. The number and identity of class members could easily be determined from the books and records of Defendant.

54. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    (a)    whether Defendant was a fiduciary of the plans;

    (b)    whether Defendants breached its fiduciary duties by receiving excessive compensation;

    (c)    whether the plans were injured by such breaches; and

    (d)    whether the Class is entitled to damages and injunctive relief.

55. Plaintiff's claims are typical of the claims of the members of the Class, as Plaintiff and members of the Class sustained injury arising out of Defendant's wrongful conduct in breaching their fiduciary duties and violating ERISA as complained of herein.

56. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained competent counsel. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

57. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. Furthermore, because the injury suffered by the individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class members individually to redress the wrongs done to them. There will be no difficulty in the

management of this action as a class action.

## COUNT I: BREACH OF FIDUCIARY DUTY

58. Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

59. The Assets in the Separate Accounts, together with any income, gains or losses credited to or charged against the Account, were to be held and managed by Defendant for the exclusive benefit of the Plan and its Participants.

60. Defendant received the Revenue Sharing Payments solely as a result of its exercise of its duties under the Contract in that, but for those duties, Defendant would not have had authority or control over the management or disposition of Plan assets and would not have been able to receive the Revenue Sharing Payments.

61. For the amount of the Investment Expenses minus the amount of the Revenue Sharing Payments, had Defendant properly exercised its duties, the expenses under the Contract charged against the Assets would have been reduced by the amount of the Revenue Sharing Payments.

62. By retaining Revenue Sharing Payments for its own benefit, Defendant failed to perform its duties for the sole benefit of the Plan, in breach of its fiduciary duty of loyalty. To the contrary, Defendant has an apparent and actual conflict of interest in that it appears to have selected mutual fund options at least in part based on the amount of the Revenue Sharing Payments.

63. As a consequence of Defendant's breaches, the Plan suffered losses equal to the amount of the Revenue Sharing Payments, together with any amounts that could have been earned thereon.

64. Defendant is liable to personally make good to the Plan any losses to the Plan resulting from each breach under 29 U.S.C. § 502(a)(2).

65. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award

equitable relief to the Class.

## COUNT II: PROHIBITED TRANSACTIONS

66. Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

67. ERISA § 406 (b)(1), 29 U.S.C. § 406 (b)(1), prohibits a fiduciary from dealing with assets of a plan for its own interest or account.

68. Defendant violated this provision in that it received assets of the Plan for its own interest through its receipt of the Revenue Sharing Payments.

69. ERISA § 406 (b)(3), 29 U.S.C. § 406 (b)(3), prohibits a fiduciary from receiving consideration from any party dealing with a plan in connection with a transaction involving assets of the plan.

70. Defendant violated this provision in that it received Revenue Sharing Payments from third parties dealing with the Plan concerning Plan investments and the payment of fees in connection therewith.

71. Defendant's receipt and retention of the Revenue Sharing Payments are transactions prohibited by ERISA.

72. Defendant is liable to personally make good to the Plan any losses to the Plan resulting from these prohibited transactions under 29 U.S.C. § 502(a)(2).

73. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for:

A. An Order determining that the instant action may be maintained as a class action under Rule 23, Federal Rules of Civil Procedure, appointing Plaintiff as class representative and determining that Plaintiff's counsel satisfies the prerequisites of Rule 23(g);

B. A Declaratory Judgment that Defendant breached ERISA fiduciary duties owed to the Plan and Participants;

C. An Order compelling Defendant to make good to the Plan all losses to the Plan resulting from Defendant's breaches of fiduciary duty;

D. Imposition of a Constructive Trust on any amounts by which Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E. An Order for equitable restitution and disgorgement of any Plan assets Defendant obtained as a result of its breaches of fiduciary duty, including receipt of the Revenue Sharing Payments and other appropriate equitable monetary relief against Defendant.

F. An Order enjoining Defendant from any further violations of their ERISA fiduciary obligations;

G. Actual damages paid to the Plan in the amount of any losses the Plan suffered;

H. An Order allocating the Plan's recoveries to the accounts of all Participants;

I. An Order awarding costs pursuant to 29 U.S.C. § 1132(g); and

J. An order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine.

Plaintiff, Zohar Stark

By_____
Robert A. Izard (ct01601)
Jeffrey S. Nobel (ct04855)

Mark P. Kindall (ct13797)
**SCHATZ NOBEL IZARD, P.C.**
20 Church Street, Suite 1700
Hartford, CT 06103
Telephone: (860) 493-6292
Facsimile:  (860) 493-6290

Ronen Sarraf
Joseph Gentile
**SARRAF GENTILE LLP**
485 Seventh Avenue, Suite 1005
New York, NY 10018
Telephone: (212) 868-3610
Facsimile: (212) 918-7967

**Attorneys for Plaintiff and the Class**